UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NANCY EDWARDS,

       Plaintiff,                       Hon. Paul L. Maloney

v.                                       Case No. 1:08-CV-374

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## STANDARD OF REVIEW

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial

interference.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted).  This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision.  *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## **PROCEDURAL POSTURE**

Plaintiff was 59 years of age at the time of the ALJ's decision.  (Tr. 24).  She completed two years of college and worked previously as a legal secretary, administrative assistant, and manicurist.  (Tr. 82).

Plaintiff applied for benefits on January 19, 2005, alleging that she had been disabled since August 27, 2004, due to bipolar disorder, anxiety, and carpal tunnel syndrome.  (Tr. 77-79, 81).  Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 27-76).  On September 20, 2007, Plaintiff appeared before ALJ Patrick Toal, with testimony being offered by Plaintiff and vocational expert, Rich Riedl.  (Tr. 404-71).  In a written decision dated October 22, 2007, the ALJ determined that Plaintiff was not disabled as defined by the Social Security Act.  (Tr. 14-26).  The Appeals Council declined to review the ALJ's determination, rendering it the Commissioner's final decision in the matter.  (Tr. 4-7).  Plaintiff subsequently initiated this appeal pursuant to 42 U.S.C. § 405(g), seeking judicial review of the ALJ's decision.

3

**RELEVANT MEDICAL HISTORY**

On August 30, 2004, Plaintiff voluntarily checked herself into the hospital. (Tr. 164-68). Plaintiff reported that she was experiencing depression, insomnia, low energy, poor concentration, social withdrawal, suicidal thoughts, anxiety, and panic. (Tr. 164). Plaintiff reported that "she has been drinking about [one and one-half] bottles of champagne daily, and she has been drinking for many years." (Tr. 164). Plaintiff reported that she "has been falling recently, under the influence of Ambien, which causes a hangover in the morning." (Tr. 165). Plaintiff also reported that she was experiencing "money problems and job stress," as well as difficulty adjusting to the death of her husband 15 years ago and being raped 22 years ago. (Tr. 164). Plaintiff's GAF score was rated as 18.[1] (Tr. 167).

During her hospitalization, Plaintiff participated in therapy and was treated with various medications with "substantial benefit." (Tr. 156). Plaintiff did not, however, participate in any "psychological testing" because such "was not indicated." (Tr. 156). Plaintiff was discharged on September 4, 2004, at which time she reported that she "could manage her medications and take care of herself." (Tr. 156). Plaintiff was diagnosed with (1) major depressive disorder, recurrent, severe without psychotic features, in substantial remission; and (2) suicidal tendency, in remission. (Tr. 157). Plaintiff's GAF score was rated as 70.[2] (Tr. 158). Plaintiff's prognosis was characterized as "good with treatment and fair without treatment and poor with the use of drugs and alcohol." (Tr.

---

[1] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 34 (4th ed. 2000) (hereinafter DSM-IV). A GAF score of 18 indicates that the individual is experiencing "some danger of hurting self or others or occasionally fails to maintain minimal personal hygiene or gross impairment in communication." DSM-IV at 34.

[2] A GAF score of 70 indicates "some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV at 34.

4

157). Plaintiff was cleared to return to work "without restrictions as she is not having any significant medication side effects." (Tr. 155).

Treatment notes dated December 7, 2004, reveal that Plaintiff is "off antidepressants now." (Tr. 170).

On March 30, 2005, Plaintiff participated in a consultive examination conducted by Neil Reilly, M.A. (Tr. 192-97). Plaintiff reported that she experienced "pretty constant" depression, as well as manic episodes that "last two to three days." (Tr. 192). Plaintiff reported that she "does not shower or dress" and "did not get out of bed for eight days recently." (Tr. 192). Plaintiff reported that her medications "help some." (Tr. 192). She reported that she "feels okay" if she is "home alone," but experiences anxiety at "family gatherings." (Tr. 192). Plaintiff reported that she continued to drink alcohol "a couple times a week," drinking "four glasses of wine at a time." (Tr. 193). Plaintiff further reported that she drinks more as her depression gets worse. (Tr. 193). Plaintiff also reported that she has "had past issues with addictions to prescriptions." (Tr. 193).

Plaintiff reported that she reads a lot and "spends a lot of time on the internet also." (Tr. 194). Plaintiff also reported that she cooks, washes dishes, shops, and washes laundry. (Tr. 194). Plaintiff appeared anxious, but the results of a mental status examination were otherwise unremarkable. (Tr. 195-96). Plaintiff was diagnosed with (1) bipolar disorder, moderate to severe; (2) generalized anxiety with some posttraumatic features; and (3) alcohol dependence. (Tr. 196). Plaintiff's GAF score was rated as 58.[3] (Tr. 196).

---

[3] A GAF score of 58 indicates "moderate symptoms or moderate difficulty in social, occupational, or school functioning." DSM-IV at 34.

On April 26, 2005, Dr. Charles Overbey completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 207-20). Determining that Plaintiff suffered from a disturbance of mood, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 208-16). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular Listing. (Tr. 217). Specifically, the doctor concluded that Plaintiff experienced moderate restrictions in the activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and once or twice experienced episodes of decompensation. (Tr. 217). Dr. Overbey also found that Plaintiff suffered from alcohol dependence. (Tr. 215).

Dr. Overbey also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 221-23). Plaintiff's abilities were characterized as "moderately limited" in four categories. With respect to the remaining 16 categories, the doctor reported that Plaintiff either was "not significantly limited" or that there existed "no evidence of limitation in this category." (Tr. 221-22).

On September 21, 2005, Plaintiff reported that she was going to try and locate a part-time job, but was "finding it hard not to drink." (Tr. 229).

Treatment notes dated September 22, 2006, indicate that Plaintiff was presently drinking one bottle of sparkling wine daily, at mid-day. (Tr. 227).

On December 13, 2006, Plaintiff participated in a consultive examination conducted by Dr. Jack Carr. (Tr. 231-43). The examination was performed at Plaintiff's attorney's office. (Tr.

6

232). Plaintiff reported that "over the past 27 months. . .she has been persistently depressed." (Tr. 234). Plaintiff reported experiencing "low energy and a marked lacked of motivation." (Tr. 239). Plaintiff reported that she experiences "social isolation" and "frequently does not bathe or maintain her own personal cleanliness." (Tr. 239). Plaintiff also reported experiencing difficulty maintaining concentration and attention. (Tr. 239).

Plaintiff reported that her "current treatment consists predominately of psychotropic medications," but that she was "not involved in counseling." (Tr. 236). Plaintiff reported that she was previously addicted to Ativan, requiring her to participate in an in-patient treatment program. (Tr. 236). Plaintiff reported that she was presently drinking "a fifth of wine per day." (Tr. 237). Plaintiff thought that "it would be helpful for her if she could be employed," but the doctor noted that it was "not clear" whether Plaintiff had made any "significant effort in looking for work." (Tr. 238). During the examination, Plaintiff's affect fluctuated "from euphoric to overtly depressed and tearful." (Tr. 239). Plaintiff was diagnosed with (1) bipolar II disorder, depressed; and (2) alcohol dependence. (Tr. 240). Her GAF score was rated as 45.[4] (Tr. 240).

Treatment notes dated May 18, 2007, indicate that Plaintiff continued to drink a bottle of alcohol daily and "hasn't taken any steps to curb her drinking." (Tr. 246).

On July 17, 2007, Plaintiff's treating psychiatrist described Plaintiff's level of functioning as "marginal," due to depression, social withdrawal, avolition, and alcohol abuse. (Tr. 245). The doctor characterized Plaintiff's prognosis as "poor." (Tr. 245).

---

[4] A score of 45 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." DSM-IV at 34.

# ANALYSIS OF THE ALJ'S DECISION

## A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[5] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

Under federal law, an individual "shall not be considered to be disabled" if "alcoholism or drug addiction" is found to be "a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). In order to determine whether alcoholism or drug addiction constitutes a "contributing factor material" to the finding of disability, the ALJ must determine whether the claimant would be disabled "if [she] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1); *see also, Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007).

---

[5] 1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

8

B. **The ALJ's Decision**

The ALJ determined that Plaintiff suffered from the following severe impairments: (1) substance abuse disorder; (2) bipolar disorder; (3) anxiety disorder; and (4) borderline personality disorder. (Tr. 17). The ALJ concluded that these disorders, in combination, satisfied the requirements of several of the impairments identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1, thus rendering Plaintiff disabled. (Tr. 17-20). The ALJ also determined, however, that Plaintiff's substance abuse was material to his determination whether Plaintiff was or was not disabled. (Tr. 17-20, 25).

The ALJ determined that if Plaintiff discontinued her substance abuse, she would still suffer from "a severe impairment or combination of impairments," but that these impairments, whether considered alone or in combination, fail to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 20-21). The ALJ further concluded that if Plaintiff discontinued her substance abuse, she would retain the ability to perform work that did not require the ability to maintain attention and concentration necessary to perform detailed or complex tasks. (Tr. 21-22). The ALJ found that such limitations would prevent Plaintiff from performing her past relevant work. (Tr. 24).

A vocational expert testified that there existed more than 50,000 jobs in the state of Michigan which an individual with such an RFC could perform, such limitations notwithstanding. (Tr. 465-69). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act. (Tr. 22-25).

### 1. The ALJ's Decision is Supported by Substantial Evidence

Plaintiff first asserts there is "no evidence" that she "can concentrate well enough to do even simple tasks on a *sustained* basis." In support of this argument, Plaintiff asserts that because she consumed alcohol only in the afternoon and evening, which was metabolized by the following morning, there is "no evidence that any concentration deficits Plaintiff experiences *from waking up to the afternoon* is alcohol-induced." In other words, Plaintiff argues that difficulty concentrating can be alcohol-related only if she is at that moment under the influence of alcohol. Not surprisingly, the record contains no evidence to support this theory. Moreover, Plaintiff has neither submitted nor identified any evidence or authority supporting such.

The evidence of record supports the ALJ's conclusion that if Plaintiff discontinued her substance abuse, her ability to concentrate would improve such that she would be able to perform work that exists in significant numbers. As Defendant notes, the record identifies only one period of time during which Plaintiff abstained from alcohol - her August 30, 2004 through September 4, 2004 hospitalization. As discussed above, when Plaintiff checked herself into the hospital she reported that she was consuming approximately one and one-half bottles of champagne daily. Plaintiff also reported that she was experiencing depression, insomnia, low energy, poor concentration, social withdrawal, suicidal thoughts, anxiety, and panic. Her GAF score was rated as 18. Plaintiff was not administered any psychological testing during this hospitalization as such "was not indicated," but was instead successfully treated with medication. Upon discharge, Plaintiff's GAF score was rated as 70 and her prognosis was characterized as "good with treatment and fair without treatment and poor with the use of drugs and alcohol." Plaintiff was cleared to

return to work without restrictions. This constitutes significant evidence that when Plaintiff does not consume alcohol, she can function at a level consistent with the ALJ's RFC determination.

As part of her request to obtain review of the ALJ's decision, Plaintiff submitted to the Appeals Council additional evidence which was not presented to the ALJ. (Tr. 374-401). The Appeals Council received this evidence into the record and considered it before declining to review the ALJ's determination. (Tr. 4-7). This Court, however, is precluded from considering such material. In *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th Cir. 1996), the Sixth Circuit indicated that where the Appeals Council considers new evidence that was not before the ALJ, but nonetheless declines to review the ALJ's determination, the district court cannot consider such evidence when adjudicating the claimant's appeal of the ALJ's determination. *Id.* at 148; *see also*, *Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007) (quoting *Cline*, 96 F.3d at 148).

If Plaintiff can demonstrate, however, that this evidence is new and material, and that good cause existed for not presenting it in the prior proceeding, the Court can remand the case for further proceedings during which this new evidence can be considered. *Cline*, 96 F.3d at 148. To satisfy the materiality requirement, Plaintiff must show that there exists a reasonable probability that the Commissioner would have reached a different result if presented with the new evidence. *Sizemore v. Secretary of Health and Human Serv's*, 865 F.2d 709, 711 (6th Cir. 1988).

This additional evidence consists of sworn statements offered by Dr. Curt Cunningham and Dr. Kenneth Nelson. These statements were obtained almost immediately after the ALJ issued his decision denying Plaintiff's claim for benefits. First, Plaintiff has failed to demonstrate that there exists good cause for her failure to present this evidence to the ALJ.

11

Moreover, it is not reasonable to assert that consideration of this material by the ALJ would have led to a different result.

Dr. Cunningham reported that he did not treat Plaintiff for alcohol abuse and that if Plaintiff had not told him that she abused alcohol, he "would not have known that." (Tr. 378-79). The doctor asserted that Plaintiff's alcohol abuse was simply a coping mechanism in response to more significant emotional problems. (Tr. 379-84). Dr. Cunningham further asserted, however, that even if Plaintiff stopped abusing alcohol the existence or severity of her other emotional problems would not be effected. (Tr. 383-84). The doctor's opinion in this regard is squarely contradicted by the medical evidence, discussed above, which reveals that when Plaintiff refrains from alcohol her condition and ability to function improve dramatically.

Dr. Nelson agreed that Plaintiff suffers from various "psychiatric difficulties" and that her alcohol abuse was "probably secondary to her mental impairment." (Tr. 393-96). The doctor also stated, however, that Plaintiff's "history of daily alcohol consumption has to be considered as contributing to" her emotional difficulties. (Tr. 393). Dr. Nelson's opinion is not inconsistent with the ALJ's opinion concerning the relationship between Plaintiff's alcohol abuse and various emotional difficulties. In sum, it is not reasonable to assert that consideration of this evidence by the ALJ would have led to a different result. Accordingly, the Court cannot consider this evidence and, furthermore, there exists no basis for remanding this matter for its further consideration.

**CONCLUSION**

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence. Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Respectfully submitted,

Date: July 30, 2009

/s/ Ellen S. Carmody
ELLEN S. CARMODY
United States Magistrate Judge